UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| QUEENS BALLPARK COMPANY, LLC, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civ. No. 15-cv-5125 |
| -against- | : | |
| | : | |
| VYSK COMMUNICATIONS, | : | |
| | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
QUEENS BALLPARK COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT**

Jonathan L. Adler, Esq.
(jadler@herrick.com)
Robert F. Sanzillo, Esq.
(rsanzillo@herrick.com)
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
(212) 592-1400

*Attorneys for Plaintiff Queens Ballpark Company, LLC*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 2

POINT I  QBC IS ENTITLED TO SUMMARY JUDGMENT ON ITS
     CLAIM FOR BREACH OF THE ADVERTISING AGREEMENT .................. 3

  A. The Advertising Agreement is a Legally Enforceable Contract ........................... 4

  B. QBC Performed Under the Agreement ................................................................. 5

  C. Vysk Breached the Agreement .............................................................................. 5

  D. QBC is Entitled to Damages Due to Vysk's Breach ............................................. 6

POINT II  QBC IS ENTITLED TO SUMMARY JUDGMENT ON ITS
     CLAIM FOR BREACH OF THE SETTLEMENT AGREEMENT .................... 7

POINT III VYSK LACKS ANY GENERAL OR AFFIRMATIVE DEFENSES
     THAT COULD PRECLUDE THE AWARD OF SUMMARY
     JUDGMENT ........................................................................................................ 8

POINT III QBC IS ENTITLED TO ITS ATTORNEYS' FEES AND COURT
     COSTS .................................................................................................................. 9

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC*,
  300 F. App'x 48 (2d Cir. 2008) ..................................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................................2, 3

*Battery Assocs. v. J & B Battery Supply, Inc.*,
  944 F. Supp. 171 (E.D.N.Y. 1996) ............................................................................................4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................................2

*Farrell Fritz, P.C. v. Mabey*,
  09 Civ. 0701 (JS)(ETB), 2011 WL 5976077 (E.D.N.Y. Nov. 23, 2011) ...................................3

*Graham v. L.I.R.R.*,
  230 F.3d 34 (2d Cir. 2000) .........................................................................................................2

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
  889 F.2d 1274 (2d Cir. 1989) .....................................................................................................4

*Knight v. U.S. Fire Ins. Co.*,
  804 F.2d 9 (2d Cir. 1986) ...........................................................................................................3

*Law Debenture Trust Co. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) .......................................................................................................3

*Matsumara v. Benihana Nat'l Corp.*,
  No. 06 Civ. 7609, 2014 WL 1553638 (S.D.N.Y. April 17, 2014) .............................................9

*McGuire v. Russell Miller, Inc.*,
  1 F.3d 1306 (2d Cir. 1993) .........................................................................................................9

*Roberts v. Edith Roman Holdings, Inc.*,
  No. 10 Civ. 4457 (LAP), 2011 WL 2078223 (S.D.N.Y. May 19, 2011) ...................................4

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998) .......................................................................................................2

*Shechter v. Comptroller of N.Y.*,
  79 F.3d 265 (2d Cir. 1996) .........................................................................................................8

*Torres v. Costich*,
  935 F. Supp. 232 (W.D.N.Y. 1996) ...........................................................................................7

## **Miscellaneous**

Fed. R. Civ. P. 8(b)(1)(A) ............................................................................................................... 8

Fed. R. Civ. P. 8(c)(1) ..................................................................................................................... 8

Fed. R. Civ. P. 56(c) ....................................................................................................................... 2

This Memorandum of Law is submitted on behalf of Plaintiff Queens Ballpark Company, LLC ("Plaintiff" or "QBC"), through its attorneys Herrick, Feinstein LLP, pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking judgment as a matter of law on its claims for breach of contract against Vysk Communications ("Defendant" or "Vysk").

## PRELIMINARY STATEMENT

This case for breach of contract could not be any more straight forward. QBC, the entity that operates Citi Field, the home ballpark of the New York Mets, seeks to recover fees owed to it by Vysk, a technology company, pursuant to an Advertising Agreement (the "Advertising Agreement") entered into between the parties on April 10, 2015. Pursuant to the Advertising Agreement (the enforceability of which neither party disputes), QBC agreed to provide Vysk with certain advertising and other rights (the "Advertising Services") in exchange for Vysk's promise to make certain payments. Vysk admits that it failed to make the full required payment due upon execution of the Advertising Agreement or the required payments due on or before May 1, 2015 and June 1, 2015. By virtue of Vysk's default and failure to cure the default, it is liable to QBC for the unpaid payments and the balance due through the term of the Advertising Agreement, plus interest, attorneys' fees, costs and late fees, as set forth in the Advertising Agreement.

In a good faith effort to resolve this matter outside the purview of the Court, the Parties entered into a fully executed confidential settlement agreement, dated March 1, 2016 (the "Settlement Agreement"),[1] pursuant to which Vysk agreed to pay QBC the sum certain of Two Hundred and Eighty Five Thousand dollars ($285,000) within twenty-one days of the full execution of the Settlement Agreement (the "Settlement Payment"). To add insult to injury, to

---

[1] Notably, both the Advertising Agreement and the Settlement Agreement are governed by New York law. (Sanzillo Decl., Ex. C at Section 8.13 & Ex. F at Section 11).

date, Vysk has also defaulted on its payment obligations under the Settlement Agreement and to date has failed to make any part of the Settlement Payment to QBC.

The undisputed record leaves no doubt that QBC is entitled to summary judgment on its claims against Vysk for breach of the Advertising Agreement and breach of the Settlement Agreement. Vysk should not be allowed to continue to avoid its unconditional payment obligations to QBC by prolonging this litigation any further.

## STATEMENT OF FACTS

The undisputed facts in support of this motion are fully set forth in the accompanying Statement of Undisputed Facts Pursuant to Fed. R. Civ. P. 56 (cited to herein as "SOF at ¶ __") and the Declaration of Robert F. Sanzillo ("Sanzillo Decl."), dated July 29, 2016, and the exhibits annexed thereto, and for the sake of brevity will not be repeated herein.[2]

## ARGUMENT

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact, and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party has established the absence of disputed material facts, to avoid summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), and present evidence that would allow a jury to find in its favor. *Graham v. L.I.R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

The party opposing the motion for summary judgment cannot rest on mere allegations but instead must present actual evidence that creates a genuine issue as to a material fact for trial.

---

[2] Capitalized terms and citations not otherwise defined herein shall have the meaning ascribed to them in the accompanying Statement of Undisputed Facts.

*Anderson,* 477 U.S. at 248.  Thus, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Knight v. U.S. Fire Ins. Co*., 804 F.2d 9, 11-12 (2d Cir. 1986) (citation omitted) ("The mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment.").   If the evidence presented by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  A factual dispute is genuine only if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson*, 477 U.S. at 248.

**POINT I**

**QBC IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR
BREACH OF THE ADVERTISING AGREEMENT**

The Court should grant QBC summary judgment on its claim for breach of contract relating to the Advertising Agreement.  "To state a claim for breach of contract under New York law, a plaintiff must allege (1) the existence of an agreement; (2) adequate performance of the contract by plaintiff; (3) breach of the agreement by the defendant; and (4) damages." *Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC*, 300 F. App'x  48, 49 (2d Cir. 2008) (citation omitted); *see also Farrell Fritz, P.C. v. Mabey*, 09 Civ. 0701 (JS)(ETB), 2011 WL 5976077, at *2 (E.D.N.Y. Nov. 23, 2011).   There can be no dispute that all elements are present in this case.

Under New York law, "the initial question for the court on a motion for summary judgment with respect to a contract claim is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (citation omitted).  Actions for breach of contract are ideal for disposition at the summary judgment stage, particularly where, as here, the terms of the contract

3

are clear and unambiguous. *See Roberts v. Edith Roman Holdings, Inc.,* No. 10 Civ. 4457 (LAP), 2011 WL 2078223, at *2 (S.D.N.Y. May 19, 2011) ("Because there is no dispute as to legally material facts and because the relevant language of the contract is unambiguous, this issue is ripe for summary judgment."); *Battery Assocs. v. J & B Battery Supply, Inc.*, 944 F. Supp. 171, 176 (E.D.N.Y. 1996) ("Where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law and the case is ripe for summary judgment.").

Thus, the starting point is the plain language of the contract. "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (citation omitted). Indeed, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation," and "[t]he court is not required to find the language ambiguous where the interpretation urged by one party would 'strain the contract language beyond its reasonable and ordinary meaning.'" *Id*. Measured against this standard, QBC's motion must be granted.

### A.     The Advertising Agreement is a Legally Enforceable Contract

As an initial matter, the parties do not dispute that the Advertising Agreement constitutes a legally enforceable contract between them, which governs the instant matter. (SOF at ¶ 3). Indeed, Vysk admits that, on or about April 10, 2015, it entered into the Advertising Agreement with QBC and immediately paid $100,000 upon execution of the Advertising Agreement. (SOF at ¶¶ 3, 15).

### B. QBC Performed Under the Agreement

The parties also do not dispute that beginning on or about April 1, 2015, in accordance with the terms of the Advertising Agreement, QBC provided Advertising Services to Vysk, including but not limited to, advertising signage on the outfield fence and behind home plate, the right for Vysk to depict the Mets name and logo on advertising material, and sponsorship of a "Lockdown Inning." (SOF at ¶ 14). Thus, there can be no material dispute that QBC performed under the contract.

### C. Vysk Breached the Agreement

Finally, there is no dispute that Vysk breached its payment obligations under the Advertising Agreement by failed to pay QBC the required payments due to QBC pursuant to express terms of the Advertising Agreement. (SOF at ¶¶ 15, 17). Based on the unambiguous terms of the Advertising Agreement, Vysk is in plain breach.

The Advertising Agreement plainly obligates Vysk to pay QBC a fee in exchange for Advertising Services during the term of the Advertising Agreement pursuant an expressly defined schedule:

> [Vysk] shall pay QBC the following sums, according to the following terms:
>
> 2015: Four Hundred Seventy Five Thousand Dollars ($475,000) due and payable in as follows: $200,000 due upon execution of this Advertising Agreement, $137,500 due on or before May 1, 2015 and $137,500 due on or before June 1, 2015.
>
> 2016: Seven Hundred Thought Dollars ($700,000) due and payable in three equal installments on or before April 1, May 1 and June 1, 2016.
>
> 2017: Six Hundred Twenty Five Thousand Dollars ($625,000) due and payable in three equal installments on or before April 1, May 1, June 1, 2017.

(SOF at ¶ 6; Sanzillo Decl., Ex. C).

5

The Agreement cannot be construed differently and there is no dispute that the Advertising Agreement was in full force and effect on from the date of execution, April 10, 2015. (SOF at ¶ 3). Yet, Vysk has acknowledged that it failed to make the required payments due to QBC pursuant to the Advertising Agreement -- including by paying only half of the $200,000 that was due upon execution of the Advertising Agreement, and by failing to make any of the $137,500 payment that was due on May 1, 2015 and the $137,500 payment that was due on June 1, 2015. (SOF at ¶ 15). Indeed, QBC gave Vysk every opportunity to perform under the Advertising Agreement, including, *inter alia*, allowing Vysk time to make payments before serving Vysk with the requisite notice that it was in default. (SOF at ¶ 16). To date, Vysk still has failed to pay QBC any monies beyond the initial $100,000 payment. (SOF at ¶ 17).

Accordingly, Vysk is in plain breach under the Advertising Agreement.

**D.     QBC's is Entitled to Damages Due to Vysk's Breach**

Because of Vysk's failure to comply with the terms of the Advertising Agreement, QBC was forced to take action to terminate the Advertising Agreement. The Advertising Agreement allows for early termination should Vysk default on their payments:

> Termination. Notwithstanding anything to the contrary in the Advertising Agreement, this Advertising Agreement may be terminated following the occurrence of any of the following events: (a) By QBC, if [Vysk] shall fail to pay when due a payment due to QBC under this Advertising Agreement and shall not have remedied such payment default within three (3) days following notice thereof.

(SOF at ¶ 9; Sanzillo Decl., Ex. C).

Due to Vysk's failure to cure their payment default, on June 16, 2015, QBC notified Vysk by letter, that it was exercising its right to terminate the Advertising Agreement, pursuant to Section 3.02(a). (SOF at ¶ 18; Sanzillo Decl., Ex. E). The Advertising Agreement provides

6

the effect of such termination will be that all amounts due by Vysk pursuant to the Advertising Agreement will immediately become due at the time of termination:

> (c)  In the event of termination by QBC under Section 3.02(a), (b) or (c), then: all amounts due QBC hereunder, including all unpaid charges and fees set forth on Exhibit C, whether in respect of periods prior to, on or following the date of termination (including any such periods that would, but for such termination, have been with the Term), shall become immediately due and payable.

(SOF at ¶ 10; Sanzillo Decl., Ex. C).

In addition to all payments becoming immediately due upon the termination of the Advertising Agreement, the Advertising Agreement also provides that QBC is entitled to collect late fees on any amounts payable under the Advertising Agreement for which payment is not timely remitted ("Late Fees").  (SOF at ¶ 7).  The Advertising Agreement prescribes that Late Fees shall accrue and compound daily based on an annual rate equal to the lesser of (i) sixteen percent (16%); and (ii) the maximum rate permitted by applicable law. (SOF at ¶ 8).

Accordingly, QBC is entitled to damages in an amount of $1,700,000, plus Late Fees, and interest pursuant to the Advertising Agreement.

## POINT II

### QBC IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR BREACH OF THE SETTLEMENT AGREEMENT

Similar to the Advertising Agreement, there is no dispute that Vysk is in default of its payment obligations under the Settlement Agreement.  A "settlement agreement is to be construed according to general principles of contract law." *Torres v. Costich*, 935 F. Supp. 232, 234 (W.D.N.Y. 1996) (applying New York law).  Here, the language of the Settlement Agreement is clear and unambiguous.  Pursuant to the express terms of the Settlement Agreement, and in consideration for QBC's execution of the Settlement Agreement, Vysk agreed

7

to pay QBC the sum of Two Hundred and Eighty Five Thousand dollars ($285,000) within twenty-one days of the full execution of the Settlement Agreement (the "Settlement Payment"):

> Settlement Payment. In consideration of QBC's execution of and compliance with this Agreement, and its release of any and all claims that it has or may have against VYSK with respect to the Advertising Agreement, VYSK agrees to pay QBC within twenty-one (21) days of the Effective Date the gross sum of Two Hundred and Eighty Five Thousand and no/100 dollars ($285,000.00).

(SOF at ¶ 20; Sanzillo Decl., Ex. F).

Indeed, Vysk's CEO, Victor Cocchia, executed the Settlement Agreement on behalf of Vysk evidencing Vysk's intent to be bound by its terms. (SOF at ¶ 21). Moreover, Vysk does not dispute the enforceability of the Settlement Agreement, its obligation to make the Settlement Payment thereunder, or that, to date, it has not made any payment to QBC. (SOF at ¶ 22). Accordingly, QBC is entitled to summary judgment on its claim for breach of contract relating to the Settlement Agreement.

## POINT III

### VYSK LACKS ANY GENERAL OR AFFIRMATIVE DEFENSES THAT COULD PRECLUDE THE AWARD OF SUMMARY JUDGMENT

Rule 8(b)(1)(A) of the Federal Rules of Civil Procedure requires a defendant in its responsive pleading to set forth "in short and plain terms its defenses to each claim asserted against it," a requirement that stands in addition to its obligation to admit or deny any allegations under Rule 8(b)(1)(A). Moreover, Rule 8(c)(1) of the Federal Rules of Civil Procedure requires a defendant in its responsive pleading to "affirmatively state any avoidance or affirmative defense" to the Complaint filed in an action. Fed. R. Civ. P. 8(c)(1). Significantly, Vysk has not pled any general or affirmative defenses which, if proven, could defeat QBC's entitlement to summary judgment on its breach of contract claims. *See, e.g. Shechter v. Comptroller of N.Y.*, 79 F.3d 265, 270 (2d Cir. 1996) ("Affirmative defenses which amount to nothing more than mere

8

conclusions of law and are not warranted by any asserted facts have no efficacy."). Indeed, Vysk's affirmative defenses rest on the allegation that QBC mitigated its damages relating to the Advertising Agreement and therefore is not entitled to the full measure of contractual damages. Even if Vysk's allegations are true, QBC is still entitled to an award of summary judgment on liability, and this matter should be sent to a special referee to determine damages. Moreover, Vysk does not offer a single affirmative defense related to the Settlement Agreement. Thus, summary judgment cannot be defeated.

## POINT IV

## QBC IS ENTITLED TO ITS ATTORNEYS' FEES AND COURT COSTS

The Advertising Agreement is clear that QBC is entitled to its attorneys' fees and court costs. Specifically, Section 3.04 provides:

> <u>Cumulative Remedies; Costs and Expenses</u>. QBC's remedies provided for in this Advertising Agreement are in addition to any other remedy allows by law or equity. [Vysk] shall be liable for all reasonable attorney's fees, costs and expenses incurred by QBC arising from any action or proceeding commenced to collect any sums owed and all collection efforts relating thereto.

(SOF at ¶ 11; Sanzillo Decl., Ex. C). Vysk's CEO initialed every page of the Advertising Agreement, including the page containing this provision, evidencing his having reviewed and approved of it. (SOF at ¶¶ 12-13). Courts in this Circuit do not hesitate to enforce attorneys' fees provisions pursuant to contract. *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993) (citation omitted) ("Although a district court has broad discretion in awarding attorneys' fees, and an award of such fees may be set aside only for abuse of discretion, where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception."); *Matsumara v. Benihana Nat'l Corp.*, No. 06 Civ. 7609, 2014 WL 1553638 (S.D.N.Y. April 17, 2014) (awarding attorneys' fees pursuant to contractual provision).

Accordingly, QBC respectfully requests judgment in its favor, including an award of its reasonable attorneys' fees and court costs.

## **CONCLUSION**

For all of the foregoing reasons, QBC respectfully requests that the Court grant its motion for summary judgment in its entirety.

Dated: New York, New York
July 29, 2016

By:     */s/ Robert F. Sanzillo*
Jonathan L. Adler (jadler@herrick.com)
Robert F. Sanzillo (rsanzillo@herrick.com)
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
Tel.: (212) 592-1400
Fax: (212) 592-1500
*Attorneys for Plaintiff*
