UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| QUEENS BALLPARK COMPANY, LLC, | : |
| | : |
| | :  Civ. No. 15-cv-5125 |
| Plaintiffs, | : |
| | :  **STATEMENT OF MATERIAL** |
| -against- | :  **FACTS IN SUPPORT OF** |
| | :  **PLAINTIFF'S MOTION FOR** |
| VYSK COMMUNICATIONS, | :  **SUMMARY JUDGMENT** |
| | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Plaintiff Queens Ballpark Company, LLC respectfully submits this Statement of Material Facts as to which there are no genuine issues to be tried, and in support of its accompanying Motion for Summary Judgment.

## THE RELEVANT PARTIES

1. Plaintiff Queens Ballpark Company, LLC ("QBC"), is a New York limited liability company that operates Citi Field, the home ballpark of the New York Mets. (Sanzillo Decl., Ex. A [Complaint] at ¶¶ 6, 11).

2. Defendant Vysk Communications ("Vysk") is a Texas corporation engaged in the technology business. (Sanzillo Decl., Ex. A [Complaint] at ¶¶ 7, 12; Ex. B [Answer] at ¶¶ 7, 12).

## THE ADVERTISING AGREEMENT

3. On or about April 10, 2015, Vysk entered into a written advertising agreement with QBC (the "Advertising Agreement"). (Sanzillo Decl., Ex. A [Complaint] at ¶¶ 1, 13, 33; Ex. B [Answer] at ¶¶ 1, 13, 33; Sanzillo Decl., Ex. C [Advertising Agreement]).

1

4. Under the express terms of the Advertising Agreement, Vysk agreed to purchase certain Advertising Services from QBC, including, *inter alia*, advertising signage on the outfield fence and behind home plate, the right for Vysk to depict the Mets name and logo advertising material, and other promotions at Citi Field throughout the season (the "Advertising Services"). (Sanzillo Decl., Ex. A [Complaint] at ¶ 15; Sanzillo Decl., Ex. C [Advertising Agreement] at Exs. A & B).

5. The term of the Advertising Agreement is from April 1, 2015 through December 31, 2017 (the "Term"). (Sanzillo Decl., Ex. A [Complaint] at ¶ 14; Sanzillo Decl., Ex. C [Advertising Agreement] at Section 3.01).

6. The Advertising Agreement provides that, in exchange for QBC's promise to provide certain Advertising Services to Vysk at Citi Field, Vysk agreed to make payments to QBC in the following manner:

> [Vysk] shall pay QBC the following sums, according to the following terms:
>
> 2015: Four Hundred Seventy Five Thousand Dollars ($475,000) due and payable in as follows: $200,000 due upon execution of this Advertising Agreement, $137,500 due on or before May 1, 2015 and $137,500 due on or before June 1, 2015.
>
> 2016: Seven Hundred Thought Dollars ($700,000) due and payable in three equal installments on or before April 1, May 1 and June 1, 2016.
>
> 2017: Six Hundred Twenty Five Thousand Dollars ($625,000) due and payable in three equal installments on or before April 1, May 1, June 1, 2017.

(Sanzillo Decl., Ex. A [Complaint] at ¶ 15; Sanzillo Decl., Ex. C [Advertising Agreement] at Ex. C).

7. Section 2.04 of the Advertising Agreement allows for QBC to collect "Late Fees" on any payments that are not timely made:

> [A]ny amounts payable under [the] Advertising Agreement that are not paid when due shall be subject to Late Fees until paid. This is in addition to all other rights and remedies available to QBC.

(Sanzillo Decl., Ex. A [Complaint] at ¶ 16; Sanzillo Decl., Ex. C [Advertising Agreement] at Section 2.04).

8. Late fees are defined in the Advertising Agreement as:

> [T]he charge assessed with respect to any payments due after the specified date in this Advertising Agreement. Late Fees shall accrue and compound daily based on an annual rate equal to the lesser of (i) sixteen percent (16%); and (ii) the maximum rate permitted by applicable law.

(Sanzillo Decl., Ex. A [Complaint] at ¶ 17; Sanzillo Decl., Ex. C [Advertising Agreement] at Schedule 1).

9. The Advertising Agreement allows for early termination of the Advertising Agreement under a number of events, one such event allows QBC to terminate the Advertising Agreement should Vysk default on their payments:

> Termination. Notwithstanding anything to the contrary in the Advertising Agreement, this Advertising Agreement may be terminated following the occurrence of any of the following events: (a) By QBC, if [Vysk] shall fail to pay when due a payment due to QBC under this Advertising Agreement and shall not have remedied such payment default within three (3) days following notice thereof.

(Sanzillo Decl., Ex. A [Complaint] at ¶ 18; Sanzillo Decl., Ex. C [Advertising Agreement] at Section 3.02).

10. The Advertising Agreement provides the effect of such termination in Section 3.03, explicitly stating:

> Effect of Termination.
>
> (a) If this Advertising Agreement expires or is terminated for any reason whatsoever, then this Advertising Agreement shall be of no

3

> further force and effect, except that (i) any right of a party hereunder to receive a payment or obligation of either party hereunder to make a payment, in each case, which has accrued on or prior to the termination or expiration of this Advertising Agreement, shall survive such termination or expiration; (ii) this Section 3.03, Section 3.04, and Articles 4, 5, 7 and 8 shall survive the termination or expiration of this Advertising Agreement; and (iii) no provision contained herein shall relieve either party from liability for any breach of this Advertising Agreement.
>
> \* \* \*
>
> (c) In the event of termination by QBC under Section 3.02(a), (b) or (c), then: ***all amounts due QBC hereunder, including all unpaid charges and fees set forth on Exhibit C, whether in respect of periods prior to, on or following the date of termination (including any such periods that would, but for such termination, have been with the Term), shall become immediately due and payable.*** (Emphasis added).

(Sanzillo Decl., Ex. A [Complaint] at ¶ 19; Sanzillo Decl., Ex. C [Advertising Agreement] at Section 3.03).

11. Moreover, Section 3.04 of the Advertising Agreement explicitly contemplates that QBC should recover reasonable attorneys' fees and costs, as well as interest on missing payments in the event of default by Vysk:

> Cumulative Remedies; Costs and Expenses. QBC's remedies provided for in this Advertising Agreement are in addition to any other remedy allows by law or equity. [Vysk] shall be liable for all reasonable attorney's fees, costs and expenses incurred by QBC arising from any action or proceeding commenced to collect any sums owed and all collection efforts relating thereto.

(Sanzillo Decl., Ex. A [Complaint] at ¶ 20; Sanzillo Decl., Ex. C [Advertising Agreement] at Section 3.04).

12. Victor Cocchia executed the Advertising Agreement on behalf of Vysk. (Sanzillo Decl., Ex. C [Advertising Agreement] at p. 17).

13. Mr. Cocchia is the CEO of Vysk. (Sanzillo Decl., Ex. B [Answer] at ¶ 29; Ex. C [Advertising Agreement] at p. 17).

## VYSK BREACHES THE ADVERTISING AGREEMENT

14. Beginning on or about April 1, 2015, in accordance with the terms of the Advertising Agreement, QBC provided Advertising Services to Vysk, including but not limited to, advertising signage on the outfield fence and behind home plate, the right for Vysk to depict the Mets name and logo on advertising material and sponsorship of a "Lockdown Inning." (Sanzillo Decl., Ex. A [Complaint] at ¶¶ 21, 34; Ex. B [Answer] at ¶¶ 21, 34).

15. Vysk failed to make the required payments due to QBC pursuant to the Advertising Agreement -- including by paying only half of the $200,000 that was due upon execution of the Advertising Agreement, and by failing to make any of the $137,500 payment that was due on May 1, 2015 and the $137,500 payment that was due on June 1, 2015 -- leaving an unpaid balance of $375,000 for 2015. (Sanzillo Decl., Ex. A [Complaint] at ¶¶ 22, 35; Ex. B [Answer] at ¶¶ 22, 35).

16. By letter, dated June 2, 2015, QBC notified Vysk that they were in default of their payment obligations pursuant to the Advertising Agreement (the "Default Notice"). QBC advised Vysk that its failure to remedy the default within three (3) business days of receipt of the Default Notice would cause QBC to exercise its rights under the Advertising Agreement. (Sanzillo Decl., Ex. A [Complaint] at ¶ 23; Ex. B [Answer] at ¶ 23; Sanzillo Decl., Ex. D [Default Letter]).

17. To date, Vysk has not made any payments to QBC other than $100,000 upon execution of the Advertising Agreement. (Sanzillo Decl., Ex. A [Complaint] at ¶ 24; Ex. B [Answer] at ¶ 24).

18.     Due to Vysk's failure to cure their payment default, QBC notified Vysk by letter, dated June 16, 2015, that QBC was exercising its right to terminate the Advertising Agreement (the "Termination Letter"), pursuant to Section 3.02(a) thereof.  (Sanzillo Decl., Ex. A [Complaint] at ¶ 25; Ex. B [Answer] at ¶ 25; Sanzillo Decl., Ex. E [Termination Letter]).

## THE PARTIES REACH A SETTLEMENT AGREEMENT

19.     On or about March 1, 2016, after QBC commenced this action, the parties entered into a fully executed settlement agreement (the "Settlement Agreement").  (Sanzillo Decl., Ex. A [Complaint] at ¶ 29; Ex. B [Answer] at ¶ 29; Sanzillo Decl., Ex. F [Settlement Agreement]).

20.     Pursuant to the express terms of the Settlement Agreement, and in consideration for QBC's execution of the Settlement Agreement, Vysk agreed to pay QBC the sum of Two Hundred and Eighty Five Thousand dollars ($285,000) (the "Settlement Payment") within twenty-one (21) days of the full execution of the Settlement Agreement:

> Settlement Payment. In consideration of QBC's execution of and compliance with this Agreement, and its release of any and all claims that it has or may have against VYSK with respect to the Advertising Agreement, VYSK agrees to pay QBC within twenty-one (21) days of the Effective Date the gross sum of Two Hundred and Eighty Five Thousand and no/100 dollars ($285,000.00).

(Sanzillo Decl., Ex. A [Complaint] at ¶ 30; Ex. B [Answer] at ¶ 30; Sanzillo Decl., Ex. F [Settlement Agreement] at Section 1).

21.     Mr. Cocchia executed the Settlement Agreement on behalf of Vysk.  (Sanzillo Decl., Ex. A [Complaint] at ¶ 29; Ex. B [Answer] at ¶ 29; Sanzillo Decl., Ex. F [Settlement Agreement] at p. 4).

## VYSK BREACHES THE SETTLEMENT AGREEMENT

22.     To date, Vysk has not made payment to QBC pursuant to the Settlement Agreement.  (Sanzillo Decl., Ex. A [Complaint] at ¶ 31; Ex. B [Answer] at ¶ 31).

Dated: New York, New York
July 29, 2016

By:    */s/ Robert F. Sanzillo*
Jonathan L. Adler (jadler@herrick.com)
Robert F. Sanzillo (rsanzillo@herrick.com)
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY  10016
Tel.: (212) 592-1400
Fax: (212) 592-1500
*Attorneys for Plaintiff Queens Ballpark Company, LLC*

7

HF 10932071v.1