UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUEENS BALLPARK COMPANY, LLC,

                      Plaintiff,

      - against -

VYSK COMMUNICATIONS,

                      Defendant.

**OPINION AND ORDER**

15 Civ. 5125 (ER)

Ramos, D.J.:

      Queens Ballpark Company ("QBC" or "Plaintiff") brings this action against Defendant Vysk Communications ("Vysk") for breach of contract. Before this Court is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

      For the reasons set forth below, Plaintiff's motion is GRANTED.

## I. Factual and Procedural Background[1]

      Plaintiff is a New York company that operates Citi Field, the home ballpark of the New York Mets. Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Pl. 56.1 Stmt") (Doc. 48) ¶ 1. Defendant is a Texas corporation engaged in the technology business. *Id.* at ¶ 2. On April 10, 2015, Plaintiff and Defendant entered into a written agreement in which Defendant agreed to purchase certain advertising services from Plaintiff beginning on

---

[1] The following facts are drawn from the Amended Complaint (Doc. 40), Plaintiff's Statement of Material Facts (Doc. 48), and Plaintiff's supporting submissions. Defendant does not dispute any of the facts included in Plaintiff's Statement of Material Facts nor did Defendant submit any supporting exhibits or documents in conjunction with its memorandum of law in opposition.

April 1, 2015 through December 31, 2017 (the "Advertising Agreement"). *Id.* at ¶¶ 3, 5. Victor Cocchia, the CEO of Vysk, signed on behalf of the Defendant. *Id.* at ¶¶ 12-13. The advertising services included, among other things, advertising signs on the outfield fence and behind home plate, and other promotions at Citi Field throughout the season. *Id.* at ¶ 4. In exchange for the advertising services provided by Plaintiff, Defendant agreed to make payments according to a set schedule, including a payment of $475,000 for the 2015 calendar year to be paid as follows: $200,000 due upon signing; $137,500 due on or before May 1, 2015; and $137,500 due on or before June 1, 2015. *Id.* at ¶ 6. Defendant also agreed to pay $700,000 for the advertising services rendered in 2016 and $625,000 for the advertising services rendered in 2017. *Id.*

The Advertising Agreement also included specific provisions regarding late payments and default. Specifically, the parties agreed that Plaintiff could recover late fees for any amounts not paid when due and could terminate the Advertising Agreement early should Defendant default on its payments and not remedy the default within three days after receiving notice. *Id.* at ¶¶ 7-9. Upon early termination of the Advertising Agreement, "all amounts due [to Plaintiff], including all unpaid charges and fees" would become "immediately due and payable." *Id.* at ¶ 10. Plaintiff was also entitled to recover attorneys' fees, costs, and expenses incurred as a result of any action commenced to collect sums owed by Defendant. *Id.* at ¶ 11.

Pursuant to the Advertising Agreement, beginning on April 1, 2015, Plaintiff provided the advertising services, including the signs on the outfield fence and behind home plate. *Id.* at ¶ 14. Defendant paid Plaintiff only $100,000 at signing – half of the amount agreed upon– and failed to make any of the subsequent scheduled payments. *Id.* at ¶ 15. By letter dated June 2, 2015, Plaintiff notified Defendant that it was in default of its payment obligations and advised Defendant that its failure to remedy the default within three business days of receipt of the letter

2

could result in termination of the Advertising Agreement. *Id.* at ¶ 16. Defendant did not remedy the default and on June 16, 2015, Plaintiff notified Defendant that the Advertising Agreement had been terminated. *Id.* at ¶ 18.

Plaintiff filed the instant action on June 30, 2015 (Doc.1), and a certificate of service was filed on July 28, 2015 (Doc. 7). On August 21, 2015, upon the application of Plaintiff for the entry of default judgment, the Court entered an order to show cause why the Court should not enter a default judgment against Defendant. (Doc. 11) Defendant filed a response on August 26, 2015 and explained that it was improperly served. (Doc. 16) The next day Defendant requested a pre-motion conference to seek leave to set aside the Clerk's entry of a default judgment and to file an answer to the Complaint. (Doc. 17) On August 31, 2015, both parties filed a letter with the Court withdrawing their respective motions. (Docs. 19, 20) Defendant filed an Answer on September 29, 2015. (Doc. 22) The Court directed the parties to appear for an initial conference on January 7, 2016. (Doc. 23) At the request of the parties, the Court adjourned the initial conference several times. (Docs. 24-27) On March 2, 2016, the parties requested a final adjournment of the initial conference pending settlement discussions. (Doc. 30)

The parties reached a settlement agreement on March 1, 2016 (the "Settlement Agreement"), in which Defendant agreed to, among other things, pay Plaintiff $285,000 within twenty-one days of the full execution of the Settlement Agreement. Pl. 56.1 Stmt. ¶ 20. The Settlement Agreement, also signed by Cocchia, provided that Plaintiff's release of claims against Defendant would become effective "only if the Settlement Payment [was] timely made in full accordance" with the agreement. Declaration of Robert F. Sanzillo in Support of Plaintiff's Motion for Summary Judgment ("Sanzillo Decl.") (Doc. 46) Ex. F.

Despite the Settlement Agreement, Defendant did not make any payments to Plaintiff. *Id.* at ¶ 22.  Consequently, on April 8, 2016, Plaintiff filed a letter with the Court requesting a status conference to address Defendant's nonpayment, which the Court granted and scheduled for April 29, 2016.  (Docs. 33, 34)  At the conference, the parties agreed to a civil case discovery plan (Doc. 39) and the Court granted Plaintiff's request to file an Amended Complaint to include claims against Defendant for breach of the Settlement Agreement.  Plaintiff filed the Amended Complaint on May 6, 2016.  (Doc. 40)  Defendant filed an Answer on May 25, 2016.  (Doc. 41)  On June 30, 2016, Plaintiff requested a pre-motion conference to seek leave to file a motion for summary judgment.  (Doc. 42)  Plaintiff filed the instant motion on July 29, 2016.  (Doc. 45)

## II.     Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the litigation under the governing law."  *Id.*; *see also Miner v. Clinton Cty. N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

**III.    Discussion**

Plaintiff seeks summary judgment on its claims for breach of the Advertising Agreement and the Settlement Agreement.  Memorandum of Law in Support of Plaintiff Queens Ballpark Company, LLC's Motion for Summary Judgment ("Pl. Memo") (Doc. 47) at 3, 7.  "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  *Fischer & Mandell, LLP v. Citibank N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citations omitted).  "Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous."  *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierece, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000).

5

Here, Defendant does not dispute that the Advertising and Settlement Agreements are legally enforceable contracts, that Plaintiff performed under the Agreements, and that Defendant breached both Agreements.[2] The Court also finds that the language of the Advertising and Settlement Agreements is wholly unambiguous. The Advertising Agreement required Defendant to pay Plaintiff specific sums pursuant to a particular schedule as consideration for Plaintiff's advertising services. The Advertising Agreement also provided specific steps to be taken by the parties in the event of a default. Defendant's undisputed failure to make the required payments or to cure the default constitute a material breach of the Advertising Agreement. Similarly, Defendant's undisputed failure to make the payment required under the Settlement Agreement also constitutes a material breach of the Settlement Agreement. Accordingly, Plaintiff's motion for summary judgment on the issue of Defendant's liability for breach of contract is GRANTED. *See e.g.*, *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 705 (S.D.N.Y. 2016) (addressing summary judgment motion for liability for breach of contract and damages separately).

Plaintiff also seeks summary judgment on the issue of damages. Under New York law, "the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." *Kenford Co. v. Cty. of Erie*, 73 N.Y.2d 312, 319 (1989). To prove damages, a "plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred as a result of the breach." *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 110-111 (2d Cir. 2007) (citations and quotations omitted). "The burden of uncertainty as to the amount of damage is upon the wrongdoer." *Washington v. Kellwood Co.*,

---

[2] Defendant asserts only one argument in its four-page memorandum of law in opposition to Plaintiff's motion for summary judgment: that the Court must deny the motion in its entirety because Plaintiff is not entitled to summary judgment on the issue of damages.

No. 05 Civ. 10034 (MHD), 2015 WL 6437456, at *12 (S.D.N.Y. Oct. 14, 2015) (citing *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977) (applying New York law)).

In addition, though generally the non-breaching party is "required to make a reasonable effort to mitigate its damages," *US W. Fin. Servs., Inc. v. Marine Midland Realty Credit Corp.*, 810 F. Supp. 1393, 1402 (S.D.N.Y. 1993) (quoting *Tynan Incinerator Co. v. Int'l Fidelity Ins. Co.*, 117 A.D.2d 796, 797 (1986)), if the contract includes an enforceable liquidated damages provision or acceleration clause, the non-breaching party has no duty to mitigate damages resulting from the breach. *See Int'l Fid. Ins. Co. v. Aulson Co.*, No. 11 Civ. 9240 (DLC), 2012 WL 6021130, at *7 (S.D.N.Y. Dec. 4, 2012) ("Because the plaintiffs seek to recover under an enforceable liquidated damages provision, they had no duty to mitigate damages.'); *Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc.,* 271 A.D.2d 636, 639, 706 N.Y.S.2d 724 (2d Dep't 2000) ("Mitigation of damages is not relevant when there is a valid liquidated damages clause."); *see also The Edward Andrews Grp., Inc. v. Addressing Servs. Co.*, No. 04 Civ. 6731 (LTS), 2005 WL 3215190, at *5 (S.D.N.Y. Nov. 30, 2005) ("An acceleration clause is one type of liquidated damages provision, which … requires a party who defaults on installment payments to pay the balance of the debt in one lump sum. Parties frequently agree to acceleration clauses, and New York courts typically enforce such provisions according to their terms.").

Here, the Advertising Agreement included a liquidated damages clause providing that in the event of Plaintiff's early termination of the Agreement due to non-payment, all amounts due were to become immediately due and payable including all charges and fees. As such, Plaintiff claims that it is entitled to $1.7 million – the total amount due under the contract ($1.8 million) minus the initial $100,000 paid by Defendant upon execution of the agreement – plus attorneys'

7

fees, costs, and interest. Because Defendant does not contest the enforceability of the acceleration clause, its argument that Plaintiff successfully mitigated its damages is irrelevant.[3] Thus, the Court finds that Plaintiff has met its burden and that no genuine issue of material fact exists with respect to the issue of damages. Accordingly, Plaintiff's motion for summary judgment on the issue of damages is GRANTED.

Though the Court finds that Defendant has breached both the Advertising Agreement and the Settlement Agreement, Plaintiff is only entitled to recover for breach of one agreement. New York General Obligations Law Section 15-501.3 provides,

> If an executory accord is not performed according to its terms by one party, the other party shall be entitled either to assert his rights under the claim, cause of action, contract, obligation, lease, mortgage or other security interest which is the subject of the accord, or to assert his right under the accord.

N.Y. Gen. Oblig. Law § 15-501 (McKinney). In other words, Plaintiff must select its remedy – either damages for the breach of the Settlement Agreement *or* damages for breach of the Advertising Agreement. *See Plant City Steel Corp. v. National Machinery Exch., Inc.*, 23 N.Y.2d 472, 478 (1969) ("Since in this case [the court has] found that the accord was breached by the defendant, the plaintiff was privileged to pursue *either* the original claim *or* the accord.") (emphasis added); *see also Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1078-79 (2d Cir. 1993), *as*

---

[3] Moreover, Defendant's claim that Plaintiff was able to lease the same services offered to Defendant to another entity is conclusory and not supported by any evidence on the record. *See Franconero v. UMG Recordings, Inc.*, 542 F. App'x 14, 17 (2d Cir. 2013) (quoting *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) ("Though we must accept as true the allegations of the party defending against the summary judgment motion, drawing all reasonable inferences in his favor, conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.")).

*amended* (Nov. 29, 1993) (holding that district court committed "plain error" in allowing double recovery for plaintiff for both breach of release and breach of underlying contract).

Accordingly, Plaintiff is entitled to the principal amount of $1.7 million as provided by the Advertising Agreement. *See generally Abou-Khadra*, 4 F.3d at 1079 (remedying impermissible double recovery without new trial by directing district court to exclude award for breach of release). Plaintiff is also entitled to recover prejudgment interest on the principal amount at the annual rate of 9%. *See Graham v. James,* 144 F.3d 229, 239 (2d Cir. 1998) ("Under New York law, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract") (internal quotation marks omitted); *see also* N.Y.C.P.L.R. § 5001 ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . at the rate of nine per cent per annum); *Koch v. Greenberg*, 14 F. Supp. 3d 247, 285 (S.D.N.Y. 2014) (noting that prejudgment interest in breach of contract cases is "mandatory" under New York law). Additionally, Plaintiff may also recover late fees and attorneys' fees and costs pursuant to the Advertising Agreement. *See Sparta Commercial Servs., Inc. v. DZ Bank AG Deutsche Zentral-Genossenschaftsbank*, 160 F. Supp. 3d 580, 585 (S.D.N.Y. 2015) (noting that under New York law, a court should not infer a party's intention to provide counsel fees as damages for a breach of contract "unless the intention to do so is unmistakably clear" from the language of the contract) (citing *Hooper Assocs., Ltd. v. AGS Comput., Inc.*, 74 N.Y.2d 487, 491 (1989)).

IV.  **Conclusion**

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 45. Consistent with the foregoing, the parties are further directed to submit a joint proposed order providing the total amount of damages owed as of the date of this Order.

It is SO ORDERED.

Dated:   December 8, 2016
         New York, New York

_____
Edgardo Ramos, U.S.D.J.